

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MITCH MOHDI | No. 22 CR 78<br><br>Judge Robert W. Gettleman |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant MITCH MOHDI, and his attorney, SEEMA AHMAD, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with knowingly and intentionally distributing a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of fentanyl, a Schedule II Controlled Substance (Count One); and knowingly and intentionally distributing a controlled substance, namely, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II Controlled Substance (Count Two); in violation of Title 21, United States Code, Section 841(a)(1).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with distributing a quantity of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperindinyl] propanamide), in violation of Title 21, United States Code, Section 841(a)(1).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

On or about January 25, 2022, at Chicago, in the Northern District of Illinois, Eastern Division, defendant knowingly and intentionally distributed a controlled substance, namely a quantity of a substance and mixture containing fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperindinyl] propanamide), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

***January 25, 2022: Defendant Distributed 10.6 Grams of Pills Containing Fentanyl to CS for $1,000.***

More specifically, from on or about January 23, 2022 to January 25, 2022, defendant exchanged a series of text messages and calls with an individual who,

unbeknownst to defendant, was cooperating with the DEA ("CS"). During the course of these communications, defendant arranged to sell the CS 100 fentanyl pills, which defendant referred to as "blues," for $1,200.

On or about January 25, 2022, at approximately 11:38 a.m., defendant met the CS on the 2000 block of North Halsted in Chicago, Illinois, and entered the CS' car. Inside the car was another individual who, unbeknownst to defendant, was an undercover law enforcement agent ("UCE"). The defendant directed the CS and UCE to the 3800 block of West Lake Street in Chicago, Illinois, to meet up with Individual A. During the drive, defendant informed the CS that "my guy has your hundred [narcotic pills] waiting." Defendant told the CS that Individual A was "holding them for me … he's my storage."

When defendant and the CS arrived at the 3800 block of Lake Street, defendant told the CS that Individual A would get in the CS' car and "give you a bag." Shortly afterwards, Individual A entered the car and handed defendant a bag. Defendant asked Individual A, "this 100? 100 blues?" Individual A responded, "yeah." The UCE handed Individual $1,200 in cash. The defendant handed the bag containing the fentanyl pills to the CS, saying "here are your blues."

Defendant acknowledges that the package contained approximately 10.6 grams of a mixture and substance containing fentanyl.

### *February 8, 2022: Defendant Distributed 42 Grams of Pills Containing Fentanyl to UCE for $4,800.*

Between on or about February 4, 2022, through February 8, 2022, defendant exchanged texts and calls with the CS to set up a second sale of fentanyl pills. During these conversations, defendant offered to sell the CS 400 fentanyl pills at a price of $12 each, for a total of $4,800. Defendant also offered to sell defendant 1,000 pills at a price of $10 each.

On February 8, 2022, defendant instructed the CS and UCE to park in a grocery store parking lot on the 9600 block of West 131st Street in Palos Park, Illinois. When the CS and UCE parked, defendant and Individual B got into the CS' car. Defendant asked the UCE for "the cash so I could count it out." Defendant took $4,800 in cash from the UCE and began counting the money. Defendant then asked Individual B if he had "those blues . . . in hundreds," in reference to blue pills containing narcotics. Individual B retrieved a plastic bag of blue narcotics pills and handed them to defendant. Defendant then handed the bag to the UCE stating, "exactly what you want," and continued counting the cash. Defendant gave approximately $3,200 to Individual B, keeping approximately $1,600 for himself.

Defendant acknowledges that the package contained approximately 42 grams of a mixture and substance containing fentanyl.

In total, across these two deals, defendant distributed approximately 52.6 grams of a mixture and substance containing fentanyl to the CS and the UCE, in exchange for approximately $5,800.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $1,000,000. Defendant further understands that the judge also must impose a term of supervised release of at least four years, and up to any number of years including life.

b. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## **Sentencing Guidelines Calculations**

8. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

b. **Offense Level Calculations**.

i. The base offense level is 24, pursuant to Guideline § 2D1.1(a)(5) and § 2D1.1(c)(8), because the total amount of fentanyl involved in the offense and relevant conduct is approximately 52.6 grams of fentanyl, which is at least 40 grams of fentanyl, but less than 160 grams of fentanyl.

ii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to

satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

   iii. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

  c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

   i. On or about February 6, 2008, defendant was convicted of defacing ID marks on firearms in the Circuit Court of Cook County, Illinois, and sentenced to two years of probation. Pursuant to Guidelines § 4A1.2(e), defendant receives no criminal history points as a result of this sentence.

   ii. On or about June 24, 2005, defendant was convicted of possession of firearms without a valid FOID, in the Circuit Court of Cook County, Illinois, and sentenced to one year of conditional discharge. Pursuant to Guidelines § 4A1.2(e), defendant receives no criminal history points as a result of this sentence.

iii. On or about October 25, 2004, defendant was convicted of assault in the Circuit Court of Cook County, Illinois, and sentenced to one year of special conditional discharge. Pursuant to Guidelines § 4A1.2(e), defendant receives no criminal history points as a result of this sentence.

iv. On or about October 18, 2004, defendant was convicted of possession of cannabis in the Circuit Court of Cook County, Illinois, and sentenced to one day of imprisonment, Pursuant to Guidelines § 4A1.2(e), defendant receives no criminal history points as a result of this sentence.

v. On or about August 19, 2004, defendant was convicted of aggravated assault in the Circuit Court of Cook County, Illinois, and sentenced to five days of community service. Pursuant to Guidelines § 4A1.2(e), defendant receives no criminal history points as a result of this sentence.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level, is 21 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 37 to 46 months' imprisonment, in addition to any supervised release and fine the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature and based on facts known to the parties as of the time of this Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately

determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B) and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of supervised release imposed in this case, a requirement that defendant repay the United States $1,200 as compensation for government funds that defendant received during the investigation of the case.

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to defendant.

**Forfeiture**

16. Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

17. Defendant agrees to forfeiture of the following specific property to the United States: a black Samsung cellular telephone, bearing IMEI 357816336638273. In doing so, defendant admits that the property described above represents property involved in the offense, as alleged in the indictment. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property,

thereby extinguishing any right, title, or interest defendant has in it. Defendant agrees to take all steps requested by the United States to pass clear title to forfeitable assets to the United States, including but not limited to, surrender of title and execution of any documents reasonably necessary to transfer his interest in any property subject to forfeiture.

18. Defendant understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

19. Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

20. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 22 CR 78.

21. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or

release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

22. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be

drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

    b.  **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

23. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

24. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

25. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

26. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

27. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

29. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

32. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

33. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 07-18-2022

SARAH STREICKER
Digitally signed by SARAH STREICKER
Date: 2022.07.09 12:42:37 -05'00'

Signed by Sarah Streicker on behalf of
JOHN R. LAUSCH, JR.
United States Attorney

ANN MARIE E. URSINI
Assistant U.S. Attorney

MITCH MOHDI
Defendant

SEEMA AHMAD
Attorney for Defendant

18