UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MITCH MOHDI | No. 22 CR 78<br><br>Judge Robert W. Gettleman |

**GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS**

The UNITED STATES OF AMERICA, by and through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits this position paper as to sentencing factors, and asks the Court to sentence defendant MITCH MOHDI to a Guideline sentence of 41 months of imprisonment, which is warranted and sufficient, but not greater than necessary.

I. **BACKGROUND**

a. **Offense Conduct**

Defendant arranged two sales of fentanyl to an undercover law enforcement officer ("UCE") and an individual who, unbeknownst to the defendant, was a confidential source working with the DEA (the "CS"). First, the defendant arranged for the January 25, 2022, sale of approximately 8.5 grams of fentanyl from Individual A to the UCE and CS (forming the basis for Count One of the indictment). Second, the defendant arranged for the February 8, 2022, sale of approximately 42.5 grams of fentanyl from Individual B to the UCE and CS (forming the basis for Count Two of the indictment). For both sales, the defendant arranged the price of the deal, set up the deal location, took the buy money from the UCE, and personally delivered the

1

fentanyl. In both cases, the fentanyl was in the form of blue pills, which the defendant referred to as "oxys" or "blues." Defendant told the UCE and CS he had been selling drugs for five years and attempted to make several other drug deals during the two undercover exchanges.

### b. Charges and Plea Agreement

The indictment in this case charges defendant with knowingly and intentionally distributing a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of fentanyl, a Schedule II Controlled Substance (Count One); and knowingly and intentionally distributing a controlled substance, namely, 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II Controlled Substance (Count Two); in violation of Title 21, United States Code, Section 841(a)(1).

Pursuant to a written plea agreement, defendant plead guilty to Count One of the indictment and admitted that he distributed a quantity of a mixture or substance containing fentanyl, on January 25, 2022. Defendant also admitted to distributing a quantity of a mixture or substance containing fentanyl on February 8, 2022, as relevant conduct.

## II. STATUTORY MAXIMUM PENALTIES

The maximum penalty for a violation of 21 U.S.C. § 841(a) is 20 years' imprisonment. Defendant is also subject to a maximum fine of $1,000,000, a term of supervised release of at least three years, and a special assessment of $100.

### III. THE PROPERLY CALCULATED GUIDELINES RANGE IS 36-46 MONTHS OF IMPRISONMENT

As a matter of process, the district court must properly calculate the Guidelines range, treat the Guidelines as advisory, consider the Section 3553(a) factors, and adequately explain the chosen sentence, including an explanation for any variance from the Guidelines range. *Gall v. United States*, 522 U.S. 38, 46 (2007).

#### A. Offense Level Calculations

The government agrees with the offense level as calculated in the PSR. *See* PSR ¶¶ 17-27. Specifically, as calculated in the PSR, the total offense level is 21. PSR ¶ 27. This offense level corresponds with the offense level as calculated in the plea agreement and the government's version of the offense.

#### B. Criminal History

The government agrees with the criminal history calculations set forth in the PSR. *See* PSR ¶¶ 30-40. Specifically, defendant has 0 criminal history points and a criminal history category of I.

On or about February 6, 2008, defendant was convicted of defacing ID marks on firearms in the Circuit Court of Cook County, Illinois, and sentenced to two years of probation. Pursuant to Guidelines § 4A1.2(e), defendant receives no criminal history points as a result of this sentence.

On or about June 24, 2005, defendant was convicted of possession of firearms without a valid FOID, in the Circuit Court of Cook County, Illinois, and sentenced to one year of conditional discharge. Pursuant to Guidelines § 4A1.2(e), defendant receives no criminal history points as a result of this sentence.

On or about October 25, 2004, defendant was convicted of assault in the Circuit Court of Cook County, Illinois, and sentenced to one year of special conditional discharge. Pursuant to Guidelines § 4A1.2(e), defendant receives no criminal history points as a result of this sentence.

On or about October 18, 2004, defendant was convicted of possession of cannabis in the Circuit Court of Cook County, Illinois, and sentenced to one day of imprisonment, Pursuant to Guidelines § 4A1.2(e), defendant receives no criminal history points as a result of this sentence.

On or about August 19, 2004, defendant was convicted of aggravated assault in the Circuit Court of Cook County, Illinois, and sentenced to five days of community service. Pursuant to Guidelines § 4A1.2(e), defendant receives no criminal history points as a result of this sentence.

### C. Advisory Guidelines Range

With a criminal history category of 21, and an offense level of I, the advisory Guidelines range is 37-46 months.

## IV. A SENTENCE OF 41 MONTHS OF IMPRISONMENT IS APPROPRIATE UNDER SECTION 3553(a)

The facts of this case, together with the factors set forth in 18 U.S.C. § 3553(a), warrant a Guidelines sentence of 41 months of imprisonment. Such a sentence is sufficient, but not greater than necessary, to comply with statutory sentencing goals set forth in 18 U.S.C. § 3553(a). In particular, it is the government's position that a Guidelines sentence of 41 months accounts for the serious nature of defendant's offense, provides just punishment, affords adequate deterrence, and will protect the

4

public from further crimes of the defendant. At the same time, the recommended sentence takes into consideration the mitigating factors that are present in this case, including defendant's personal characteristics and history.

### A. Nature and Circumstances of the Offense, and the Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment

Defendant's offense is serious. Fentanyl is an extremely dangerous substance. Worse, defendant trafficked in counterfeit pills which he referred to as "blues" or "oxys," but which actually contained fentanyl. An unsuspecting user may think they were purchasing oxycodone, when in reality, they may have received a potentially lethal dose of fentanyl.[1]

Defendant's charges here relate to sales of pills to undercover agents, and the pills were not actually distributed in the community. However, several facts indicate that the defendant sold counterfeit fentanyl pills and other drugs on multiple occasions over the last several years:

First, defendant stated on a recoded conversation with an undercover agent that he had been selling drugs for five years. Specifically, on January 25, 2022, while the defendant, the UCE, and the CS were driving toward the buy location identified

---

[1] A publicly available DEA fact sheet on counterfeit pills, available here, https://www.dea.gov/sites/default/files/2021-09/DEA_Fact_Sheet-Counterfeit_Pills.pdf, states, "DEA lab testing reveals that 2 out of every 5 pills with fentanyl contain a potentially lethal dose."

In November 2021, the Chicago Tribune reported on several residents of this District who died after using counterfeit pills containing fentanyl, including counterfeit oxytocin pills, without realizing what they were ingesting. *See,* https://www.chicagotribune.com/news/breaking/ct-fentanyl-counterfeit-drugs-xanax-cocaine-heroin-20211109-djz5gngrbbatlcog7wahg2gdxq-story.html.

by the defendant, the defendant shared with the UCE and the CS that the defendant's relative, "doesn't know that I've been selling drugs here for five years." [2]

Second, during defendant's interactions with the UCE and CS on January 25, 2022, defendant offered to sell other drugs to them and to unknown individuals over the phone. For example:

- On the way to the meet location, defendant told the UCE and CS, "there's gunna be a line of 10 people after you. . . I do this shit...the ghettos and all that."

- During the drive, defendant made a phone call and asked, "how much are you selling a ball [3.5 grams of cocaine] for?" Defendant then requested "1 ball," "a 10 pack" of Viagra, "45 oranges [Adderall pills]" and "100 blues [oxycodone, or pills printed to look like oxycodone]."

- Defendant took another call and stated, "I'm selling these oxys…and picking up an 8 ball and some…Viagras…and I'ma sell your blues and your whites…my partner is going to buy a ball." Defendant then spoke to the UCE and the CS and asked if they wanted to purchase 50 fifteen milligram Oxycontin pills or 140 "M367" [hydrocodone]. The UCE declined, stating that the UCE only had the previously agreed upon amount of $ 1,200 in cash with him.

- Defendant indicated the UCE could contact the defendant in the future, through the CS, if the UCE was interested in additional sales.

---

[2] The summaries of recorded conversations and text message exchanges do not include reference to all of the topics covered during the conversations. Interpretations are in [brackets].

- Defendant stated he had a contact who had a large quantity of "crystal meth" [methamphetamine] and could sell it to the CS and UCE for "$350 an ounce."

- Defendant made another call, in which he discussed "100 green and 100 yellows [narcotic pills]." During this call, defendant said he is going to "Cash App . . . what I got right now."[3]

Third, in the two transactions for which defendant was charged, he arrived with a different supplier each time. The fact that defendant had multiple suppliers indicates that the two transactions he had with undercover agents were part of a pattern and were not isolated incidents.

Fourth, during his interaction with the undercover agent during the January 25, 2022 narcotics distribution, defendant told the undercover agent in advance how the defendant's supplier would package the narcotics (in a chip bag), which indicated this was not their first exchange.

Fifth, during communications with the CS leading up to defendant's February 8, 2022 distribution, the defendant offered the confidential source a bulk discount -- $10 per pill instead of $12 if the confidential source purchased over 1,000 pills -- indicating the defendant had access to more pills than he actually sold as described in the plea agreement.

---

[3] Cash App is a mobile application used for directly sending money from one user to another user.

Sixth, during the February 8, 2022 distribution, defendant asked his supplier, "we're good on those…the 200…tomorrow right," indicating he had another narcotics transaction set up.

From the above, it is apparent that defendant's charged conduct was merely part of a pattern of drug sales over many years.

For all of these reasons, the nature and circumstances of defendant's crime, weighs in favor of imposing a Guidelines term of imprisonment in the range of 41 months. Such a sentence will reflect the seriousness of defendant's conduct and provide just punishment.

### B. Defendant's History and Characteristics, and the Need to Protect the Public from Further Crimes by the Defendant

Aside from the instant conviction, which as discussed above is a very serious one, defendant has prior convictions for assault and firearms offenses, which did not result in criminal history points and are not accounted for in defendant's Criminal History Category. Further, as described above, defendant has an admitted history of selling controlled substances. The instant offense was part of a pattern of activity. In mitigation, defendant plead guilty and admitted to the charged conduct, and defendant's motion and the PSR identify defendant's difficult circumstances during his upbringing. A sentence of 41 months' imprisonment is sufficient to protect future victims from defendant's conduct.

### C. Adequate Deterrence

Another important goal of sentencing is "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). The sentence imposed here should be

8

severe enough to provide for specific deterrence, as set forth above, as well as to deter others from engaging in similar conduct.

Defendant has not served significant terms of imprisonment for his prior convictions, and the short sentences or conditional sentences clearly did not deter defendant from the instant offense. A Guidelines sentence in this case would be sufficient but not greater than necessary to afford adequate deterrence to the defendant specifically, and to deter others generally from committing similar conduct.

In summary, for all of the reasons explained above, the government believes that the factors in this case support a Guidelines sentence of 41 months.

## V. SUPERVISED RELEASE

The government believes a five-year term of supervised release is appropriate in this case, given the nature of the offense and defendant's criminal history.

## VI. CONCLUSION

For the reasons stated above, the government respectfully requests that this Court impose a sentence in the range of 41 months of imprisonment, a 5-year term of supervised release with the conditions listed above, and a $100 special assessment.

Respectfully submitted.

JOHN R. LAUSCH, JR.
United States Attorney

By: */s/Ann Marie E. Ursini*
ANN MARIE E. URSINI
Assistant United States Attorney